IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

WILLIAM R. PEARCE,           )
                                      )
          Plaintiff,        )    TC-MD 170277R
                                        )
      v.                   )
                                      )
JOSEPHINE COUNTY ASSESSOR,  )
                                      )
          Defendant.     )    **FINAL DECISION[1]**

Plaintiff appealed Defendant's removal of 16.76 acres of land, identified as Account R325421 (subject property), from western Oregon forestland special assessment. A trial was held on February 12, 2018, in the Oregon Tax Court. William R. Pearce (Pearce) appeared on his own behalf. Pearce and Kendon R. Leet (Leet) testified as witnesses on behalf of Plaintiff. Constance L. Roach (Roach), Josephine County Assessor, appeared and testified on behalf of Defendant. Defendant's Exhibits A to G were received into evidence without objection.

## I. STATEMENT OF FACTS

Pearce was a property developer and apartment owner in another state. He decided to move to Oregon and "disappear." In 2016, he engaged Leet, an experienced rural real estate broker, to find a suitable property in southern Oregon. Leet testified that he was instructed to look for property with income potential, which for that area meant timber property. Most of the properties Leet and Pearce looked at had a timber component. Pearce eventually found the subject property: a house and forestland on approximately 20 acres of land, which was approved for western Oregon forestland special assessment in 1988. (Def's Ex F at 1.)

---

[1] This Final Decision incorporates the court's Decision, entered August 22, 2018, with the addition of the court's analysis regarding costs and disbursements in Section III.

Prior to the close of escrow, Pearce asked Leet if he knew anyone knowledgeable about timber. Leet connected Pearce with Tim Cummings (Cummings), whom Leet testified was a known forester in the area and the owner of a logging company. At trial, Leet read a December 13, 2016, email he sent to Cummings, which contained an aerial photograph of the subject property, asked Cummings for his thoughts about the subject property's timber value, and informed him he could have the gate code if needed. Pearce subsequently walked the property with Cummings. Pearce testified that Cummings told him that he had about $100,000 worth of marketable timber on the property. He further said that Pearce appeared "handy" and it might be more economical if he did the work of managing the timber himself. Escrow closed on the subject property on December 14, 2016.

Roach testified that she regularly sends questionnaires to new property owners under a forestland special assessment to ascertain their intention for the property. She testified that she sends approximately 250 questionnaires per year. On January 19, 2017, Roach sent a questionnaire to Pearce. It stated in pertinent part:

> "Our records indicate that you recently acquired property that includes specially assessed forestland under ORS 321.257 to 321.390. Please return this questionnaire to the Josephine County Assessor's Office, within 30 days of the date of this letter. Your cooperation is needed to determine your eligibility for this special assessment.
>
> "1) If you acquired the forestland in a sale, what (if any) value was placed on timber as part of your purchase price? _____
>
> "2) Do you intend to hold the forestland for the predominant purpose of growing and harvesting marketable timber? (consider the forestland, not the residential portion of your property)
> _ Yes _ No
>
> "* * * * *
>
> / / /

"5) If there is a dwelling on the parcel, is it used in conjunction with management
of the forestland?
_ Yes  _ No"

(Def's Ex A.)

Pearce completed the form by hand and responded to question 1 as follows: "I purchased the property to live in the house." (*Id.*)  He answered "No" to question 2 and did not check a box for question 5, but wrote "there is a house—I will manage the property from there—but it is not primarily a timber property." (*Id.* (emphasis in original).)  Pearce signed the completed questionnaire on January 25, 2017, and mailed it to Defendant.

On May 15, 2017, Defendant mailed a letter to Pearce notifying him that 16.76 acres of the subject property was removed from western Oregon forestland special assessment.  (Def's Ex B.)  The letter described the reason as "Discovery by the Assessor that the land is no longer held for the predominant purpose of growing and harvesting trees as defined under ORS 321.257 and therefore, no longer meets the qualifications for this classification." (*Id.*)  Pearce testified that upon receiving the disqualification letter he immediately went to talk to Roach.  Pearce told Roach that the questionnaire was confusing and that he did intend to market the timber.  Pearce asked to change his answers to the questionnaire.  Roach declined to make a change because she felt his answers on the questionnaire were the best expression of his intent regarding the subject property.

## II.  ANALYSIS

The issue in this case is whether Defendant properly disqualified the subject property from western Oregon forestland special assessment based on Defendant's finding that the property was no longer held for the predominant purpose of growing and harvesting trees under ORS 321.257.[2]

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to the 2015 version.

ORS 321.257(2) defines "forestland," in pertinent part, as "land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees." The parties agree that the subject property meets all the other requirements of forestland, except they differ on Pearce's predominant purpose for the land.

Once land has been designated as forestland it remains as such until the assessor removes the designation. ORS 321.359. Under that section, the assessor is required to remove the forestland designation if any of the following events occur:

"(A) Notification by the taxpayer to the assessor to remove the designation;

"(B) Sale or transfer to an ownership making it exempt from ad valorem property taxation;

"(C) Discovery by the assessor that the land is no longer forestland; or

"(D) The act of recording a subdivision plat under ORS chapter 92."

ORS 321.359(1)(b).

Removal of the forestland designation results in disqualification of the land from special assessment. ORS 308A.700(1). Generally, the owner of designated forestland will pay annual property taxes at reduced rate. If the land is disqualified from special assessment, additional taxes may be assessed based on the amount of tax savings for the five years preceding the disqualification. ORS 308A.703(3)(d)(B).

Defendant contends that Pearce's intent or "predominant purpose" for the subject property was clearly and unequivocally stated in his response to its January 19, 2017, questionnaire: "[The subject property] is not primarily a timber property." (Def's Ex A.) Based on Pearce's stated intent, Roach testified that she was required by ORS 321.359(1)(b)(C) to

disqualify the subject property from special assessment.

Pearce makes three primary arguments. First, Defendant's questionnaire is not statutorily required and is confusing. The parties readily agree that the questionnaire is not statutorily required. Yet, the statutory scheme makes it clear that it is a county assessor's job to ascertain the primary purpose for a timber property to determine its eligibility for special assessment. A questionnaire is one way to accomplish that task. Even though the questionnaire is not required by law, the court should not dictate to counties on how to do their job, absent statutory authority. Plaintiff has cited no authority for the court to do so.

Pearce also contends that if he had known that his property could be disqualified from special assessment based on his answers to the questionnaire he would have been more careful. Pearce cites to the case of *Evans v. Josephine County Assessor*, TC-MD 110892C, WL3027140 (Or Tax M Div July 25, 2012), where the court considered a similar claim that Defendant's questionnaire was confusing. In *Evans* the taxpayers argued that the term "marketable" in the questionnaire was confusing. The taxpayers apparently equated the term "marketable" with "commercial." (*Id.* at 2.) Because they "were not intending to operate 'commercially,' they answered "no" to the question of whether the land was being held for the purpose of growing and harvesting marketable timber; instead, they wrote that "their intent was to 'preserve' the forestland[.]" *Id.* The court found that the taxpayers, who had harvested timber in the state of Washington, were familiar with a different definition of the term "preservation" in that state and were confused. *Id.* Unlike the *Evans* case, however, Pearce offered no specific term that was confusing. Instead, it appears that he was only confused about the consequences of his answers. Thus, in this regard the *Evans* case can be distinguished.

Pearce's second argument is that the 5-year lookback additional tax is unconstitutional.

He argues that he should not be compelled to pay property tax for the person who owned the property prior to him. This argument fails because property tax applies to the property and not to the property owner. Pearce would not be paying the property tax of another but, rather, the property tax assessed on the property. One statutory provision, ORS 311.235, protects a "bona fide purchaser" from the reach of taxes that were not a matter of public record at the time of purchase. Here, the potential additional taxes were public information at the time Pearce purchased the subject property. Property tax records as of 2016 show "POTENTIAL ADDL. TAX LIAB," as does the 2016-17 property tax bill. (Def's Exs C, D.) Because the potential additional taxes were a matter of public record at the time he purchased the property, Pearce knew or should have known that additional taxes could be assessed against the property in the future. The court is unable to discern any constitutional violation.

Pearce's third argument is that his evidence demonstrates that he had the intent of growing and harvesting marketable timber. On that issue the court will ascertain Pearce's intent by looking to his answers to the questionnaire and to his overt actions. Pearce's answers to Defendant's questionnaire are unhelpful for his case, as they indicate his predominant purpose for the property was use as a residence. Pearce defended his responses as unreflective and guided by his desire to be left alone. Or possibly, in light of his interactions with Defendant's office and the court, it could be because of his bellicose style. In either case, the best that could be said is the questionnaire does not reveal the whole story. Thus, the court turns its attention to his overt actions.

Pearce told his real estate broker he was seeking property with a potential source of income. Leet testified that meant timber property for the area of southern Oregon where Pearce was looking. Next, Pearce reached out to a commercial logger prior to the close of escrow to

talk about the value of marketable timber on the property. At the time Pearce received the questionnaire, he had only owned the subject property for a month. The growth cycle of marketable trees is long, and it is understandable that Pearce may have needed some time to settle into his new home before considering long term plans for the property. Additionally, the court is persuaded that his prior career as a developer made him inclined to exploit profit from his property rather than merely wanting to preserve trees, as Roach stated is typical of many new property owners in the county.

In cases before the court, the party seeking affirmative relief, here the Plaintiff, bears the burden of proof and must establish his case by a "preponderance" of the evidence. ORS 305.427. This court has previously ruled that a "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Despite Pearce's responses on the questionnaire, Pearce's over actions were sufficient to eke-by his burden of persuasion. Pearce's overt actions reveal an intention to purchase the property to generate income—that would indicate cutting trees for economic gain.

### III. COSTS AND DISBURSEMENTS

Plaintiff filed a Statement for Costs and Disbursements on September 4, 2018, requesting that the court award him costs and disbursements totaling $477.77. Defendant filed an Objection to Statement of Costs (Objection) on September 7, 2018, stating that:

> "Defendant declassed Plaintiff's property based on a questionnaire completed by Plaintiff which indicated that the property was not held for the predominate purpose of growing and harvesting marketable timber. * * *
> Plaintiff testified at trial that he had been seeking property that could produce income and had '…reached out to a commercial logger prior to the close of escrow to talk about the value of marketable timber…' Prior to trial, Defendant had no knowledge of such actions taken by [Plaintiff]. Had this information been provided to Defendant prior to filling this appeal, it is likely that the declassification of the forest land would have been reversed."

(Def's Objection at 1.)

The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursements to the prevailing party. *Wihtol I v. Dept. of Rev.*, 21 OTR 260, 267-268 (2013). There is no question that Plaintiff received a favorable decision, as the court reversed Defendant's decision to disqualify the subject property from western Oregon forestland special assessment. The question is whether the court should, in its discretion, award Plaintiff the requested costs and disbursements.

The court agrees with Defendant, that the information Plaintiff initially provided to Defendant, stating in no uncertain terms that the property would not be used "for the predominant purpose of growing and harvesting marketable timber," created the impetus for this trial. Therefore, Plaintiff's request for costs and disbursements is denied.

IV. CONCLUSION

After careful consideration, the court finds that Plaintiff's predominant purpose for the subject property was the growing and harvesting of marketable timber. The subject property should not be disqualified from western Oregon forestland special assessment. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted. The subject property, identified as Account R325421, qualified for western Oregon forestland special assessment as designed forestland for the 2017-18 tax year.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Plaintiff's request for costs and disbursements is denied.

Dated this ___ day of September, 2018.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on September 18, 2018.*